**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRIS P. FRAZIER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LAMONTE J. MOORE,            )
                            )
    Appellant-Defendant,     )
                            )
    vs.                      )        No. 48A05-1403-CR-136
                            )
STATE OF INDIANA,           )
                            )
    Appellee-Plaintiff.      )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1309-FA-1758

**October 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Lamonte Moore pled guilty to dealing in cocaine, unlawful possession of a firearm by a serious violent felon, maintaining a common nuisance, and possession of marijuana. He received a sentence of thirty-five years, with twenty-eight years executed in the Indiana Department of Correction and seven years suspended to probation. He appeals his sentence, raising two issues for our review: (1) whether the trial court improperly considered Moore's Indiana Risk Assessment System ("IRAS") score as an aggravating circumstance; and (2) whether Moore's sentence is inappropriate in light of the nature of his offenses and his character. Concluding the trial court did not consider Moore's IRAS score as an aggravating circumstance and that his sentence is not inappropriate, we affirm.

## Facts and Procedural History

On February 28, 2013, police officers with the Madison County Drug Task Force went to 2316 Lincoln Street in Anderson, after receiving information regarding drug activity at that address. Moore answered the front door of the residence, but he initially denied that he was Lamonte Moore and claimed that it was not his residence. After he was confronted by an officer who knew him, however, he admitted that he was Lamonte Moore. The officers questioned Moore regarding the suspected drug activity. Upon observing Moore's furtive movements and odd behavior, the officers decided to conduct a pat-down search, at which point Moore told the officers he had marijuana on his person. A search of Moore's person revealed a bag of crack cocaine in the amount of nearly twelve grams.

Law enforcement officers obtained a search warrant for Moore's residence. Police found two 9mm handguns in the residence, ammunition, and a high-capacity magazine for one of the handguns. Police also found digital scales, plastic baggies, and materials used to cook crack cocaine. Moore also admitted to arresting officers that he both sells and uses crack cocaine.

On September 11, 2013, the State charged Moore with Count 1, dealing in cocaine, a Class A felony; Count 2, unlawful possession of a firearm by a serious violent felon, a Class B felony; Count 3, maintaining a common nuisance, a Class D felony; and Count 4, possession of marijuana, a Class A misdemeanor. Moore pled guilty to all four counts on February 11, 2014.

A sentencing hearing was held on March 3, 2014. After hearing evidence and argument from defense counsel and the State, the trial court made the following sentencing statement:

> Mr. Moore, I think it's unfortunate that you've gotten to this point in the case and you haven't really accepted responsibility for what you did. . . . [T]he fact that you would be watching children when you're someone who's partying all weekend, gettin' high on crack, with a loaded handgun in the house, is shocking. You may not see yourself as a bad guy, but you did some bad things and those actions that you did are part of you. So there's a bad side to you that you haven't come to terms with. Are you all evil all the time? Probably not. I think there's probably a very good side to you, too, that's good to your friends, good to your family, cares about children, but we have to deal with the acts that you committed that broke the law. And you committed some very large breaches of the law here. And in every way that you can you really tried to minimize that. And that's unfortunate. I would feel much better about things in your case and feel much more ability to do something helpful for you if I thought that you understood what you did and that you were headed a different direction. But, when you can't come to terms with the facts that you did something very, very wrong here, my hopes for your rehabilitation are diminished. If

you got it and you were really sorry about everything that you did, I would feel more hopeful about where you're headed in the future, but as you sit here today, you haven't gotten it. You don't understand the gravity of what you did. What do you think the risk is, Mr. Moore, in combining loaded handguns and cocaine dealing and getting high all weekend? You think people get killed that way? They absolutely do. It's not a theoretical or a hypothetical. That happens here in this community. People get killed in that kind of situation and you don't see that. And that's very troubling.

In terms of aggravation and mitigation, I find there is substantial aggravation here. The prior legal history of the defendant, the juvenile robbery adjudication, the adult aiding, inducing, causing robbery conviction. This is [Moore's] second felony conviction as an adult. I do find pursuant to Indiana Code 35-50-2-2, uh, 2-2(b)(4)(O) that [Moore] did possess a firearm in the course of committing dealing cocaine. In terms of mitigation here, I find that the defendant did accept responsibility at a late date, on the day of trial, and without a full-throated acceptance of his own wrongfulness of his conduct here so that undercuts the weight a little bit of his having pled guilty but it is still a mitigator and I will find it as a mitigator. I do find that the aggravation does strongly outweigh the mitigation. And, as noted by the prosecutor I believe, [Moore] does have a high IRAS score which indicates a high risk of recidivism and a high need for services. I think nothing less than a significant amount of time here in prison really recognizes the gravity of the offense, but I'm not going to go to the extent that the State has requested either.

Transcript at 83-86 (emphasis added). After that statement, the trial court ordered concurrent sentences of thirty-five years (with seven years suspended) for Count 1, twenty years for Count 2, three years for Count 3, and one year for Count 4. Thus, Moore received an aggregate sentence of thirty-five years, with twenty-eight years executed with the Indiana Department of Correction and seven years suspended to probation. This appeal followed.

Discussion and Decision

I.  Moore's IRAS Score

Moore's first issue alleges an abuse of the trial court's sentencing discretion. "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances. Id. The trial court may abuse its discretion in sentencing by:

> (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law.

Kimbrough v. State, 979 N.E.2d 625, 628 (Ind. 2012) (citing Anglemyer, 868 N.E.2d at 490-91).

The pre-sentence investigation report filed prior to Moore's sentencing hearing contained an assessment of Moore's rehabilitative needs and risk to reoffend, which is calculated using the IRAS Community Supervision Tool.[1] This tool considers a person's "criminal history; education; employment and finances; family and social support; neighborhood problems; substance use; peer associations; and criminal attitudes and behaviors." Presentence Investigation Report at 9. Moore's IRAS score indicated that he was at a high risk to reoffend. As noted in the quote above, the trial court alluded to Moore's IRAS score immediately before announcing Moore's sentence. Moore alleges the trial court improperly considered his IRAS score as an aggravating circumstance.

---

[1] Our supreme court's decision in Malenchik v. State contains an in-depth discussion of the nature and use of evidence-based offender assessment instruments in Indiana's criminal justice system. See generally 928 N.E.2d 564 (Ind. 2010).

In <u>Malenchik v. State</u>, our supreme court discussed the role of evidence-based offender assessment instruments, such as the IRAS, by trial courts in sentencing. 928 N.E.2d 564, 568-75 (Ind. 2010). The court held that such scores are not to serve as aggravating or mitigating circumstances and should not be used to determine the gross length of a defendant's sentence. <u>Id.</u> at 575. Such scores may, however, be "considered as a supplemental source of information to assist a trial court in formulating the manner a sentence is to be served." <u>Id.</u> For example, these evidence-based assessment instruments may be considered by the court in deciding "whether to suspend all or part of a sentence, how to design a probation program for the offender, whether to assign an offender to alternative treatment facilities or programs, and other such corollary sentencing matters." <u>Id.</u> at 573.

We acknowledge that the trial court's statement regarding Moore's IRAS score is subject to varying interpretations. That said, we observe that the trial court specifically delineated aggravators and mitigators in this case—both in its oral statement, tr. at 85, and in the trial court's written sentencing order, Appellant's Appendix at 13—and in neither instance did the trial court identify Moore's IRAS score as an aggravating factor. For that reason, our reading of the record is that the trial court did not consider Moore's IRAS score as an aggravating circumstance, but instead considered it for some other purpose—presumably for the proper purpose of determining what portion, if any, of Moore's sentence should be suspended.

Even if the trial court did treat Moore's IRAS score as an aggravating circumstance, we do not believe that such error would necessitate a remand of this case.

In Anglemyer, the court said that an abuse of discretion requires remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." 868 N.E.2d at 491. Moore does not dispute that the trial court's other aggravating factors were supported by the record, and there is no doubt that the trial court gave Moore's sole mitigator—his guilty plea—very little weight. We are confident that a remand in this case would not result in a lesser sentence for Moore, and as we will discuss below, we do not believe Moore's sentence is inappropriate in light of the nature of his offenses or his character. Therefore, remand for resentencing would be unnecessary even if an abuse of discretion occurred in this case. See id.; see also Williams v. State, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013) (holding that even if the trial court abused its discretion by considering the defendant's IRAS score, remand was unnecessary where the court concluded the sentence imposed was not inappropriate).

## II. Appellate Rule 7(B)

In addition to Moore's IRAS argument, he contends his sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) gives appellate courts the authority to revise a defendant's sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our inquiry focuses on the defendant's aggregate sentence, rather than the number of counts, length of the sentence on any individual count, or whether any sentences are concurrent or consecutive. Brown v. State, 10 N.E.3d 1, 8 (Ind. 2014). It is the defendant's burden to persuade the

reviewing court that the sentence is inappropriate. Conley v. State, 972 N.E.2d 864, 876 (Ind. 2012).

At the outset, we note that "[w]hen considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." Holloway v. State, 950 N.E.2d 803, 806 (Ind. Ct. App. 2011). At the time of Moore's offense, a Class A felony carried an advisory sentence of thirty years, with a range of twenty to fifty years. Ind. Code § 35-50-2-4 (2013). Moreover, Moore committed his act of dealing in cocaine while in possession of a firearm, which meant Moore is required to serve a minimum of twenty years executed in the Indiana Department of Correction. See Ind. Code § 35-50-2-2(b)(4)(O) (2013). Moore's sentence was thirty-five years, with twenty-eight years executed, and seven years suspended to probation. In determining whether a sentence is inappropriate, "we 'may consider all aspects of the penal consequences imposed by the trial judge in sentencing the defendant,' including the fact a portion of the sentence is suspended to probation." Calvert v. State, 930 N.E.2d 633, 643 (Ind. Ct. App. 2010) (quoting Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010)).

As to the nature of Moore's offense, we recognize that the amount of cocaine found in Moore's possession—nearly twelve grams—is well in excess of the three grams necessary to give rise to a Class A felony. See Ind. Code § 35-48-4-1(b) (2013). More importantly, however, our legislature has signaled that Moore's offense is particularly egregious because it was committed while in possession of a firearm. See Ind. Code § 35-50-2-2(b)(4)(O) (limiting a trial court's ability to suspend a sentence for dealing in cocaine when the crime is committed while in possession of a firearm). Thus, we believe

the nature of Moore's offense does not merit a sentence reduction. See Johnson v. State, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (stating a factor in determining if a sentence is inappropriate is whether the offense in question is more or less egregious than the "typical" offense envisioned by the legislature when it set the advisory sentence). Moore's attempts to minimize the seriousness of his offenses, both before the trial court and on appeal, are unavailing.

Looking to Moore's character, we take notice of the first aggravator found by the trial court: Moore's criminal history. "When considering the character of the offender, one relevant fact is the defendant's criminal history." Id. at 857. Moore's criminal history includes a juvenile adjudication for robbery, a Class C felony if committed by an adult, and an adult conviction for armed robbery, a Class B felony. In addition, his criminal record shows a past probation violation.

To support his claim of good character, Moore points to testimony given at the sentencing hearing indicating that he is a good father and a nonviolent person. Particularly with regard to Moore's active role as a father, we are pleased to see that Moore possesses such a redeeming quality. However, this fact does not override the seriousness of Moore's offense or his criminal history. Considering the nature of his offenses and his overall character, we are not persuaded that Moore's thirty-five year sentence is inappropriate.

## Conclusion

Concluding the trial court did not consider Moore's IRAS score as an aggravating circumstance and that his sentence is not inappropriate in light of the nature of his offenses and his character, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.