## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 19 2015, 9:08 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Henderson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 19, 2015

Court of Appeals Case No.
48A02-1405-CR-370

Appeal from the Madison Circuit Court
The Honorable David Happe, Judge
Case No. 48C04-1309-FB-1814

**Bradford, Judge.**

# Case Summary

[1]    On September 19, 2013, Anderson Police Officer Christopher Frazier, together with other Anderson Police Officers, went to the residence of Appellant-

Defendant Anthony Henderson after Officer Frazier received information which indicated that Henderson was dealing drugs from his residence. Upon arriving at Henderson's residence, officers encountered an individual who admitted that he had purchased drugs from Henderson. The officers conducted a search of Henderson's residence after obtaining a search warrant. During their search, officers found drugs and drug paraphernalia, including scales and a ledger that contained client names and dollar amounts next to the client names.

[2] Henderson pled guilty after being charged with Class B felony possession of a narcotic drug, *i.e.*, heroin, Class B felony possession of cocaine, Class D felony maintaining a common nuisance, and Class A misdemeanor dealing in marijuana. The trial court accepted Henderson's guilty plea and subsequently sentenced him to an aggregate term of sixteen years, with twelve years executed and four years suspended to probation. On appeal, Henderson contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate in light of the nature of his offenses and his character. We disagree and conclude that the trial court did not abuse its discretion in sentencing Henderson and that his sentence is not inappropriate.

# Facts and Procedural History

[3] While working for the Anderson Police Department, Officer Christopher Frazier received information from the Madison County Drug Task Force ("MCDTF") indicating that Henderson was dealing marijuana, cocaine, and prescription medication from his residence. On September 19, 2013, Officer

Frazier and Officer Chad Boynton went to Henderson's residence, which was located less than 1000 feet from a public park, to investigate the information received from the MCDTF.

[4] Upon arriving at Henderson's residence, Officers Frazier and Boynton encountered a man, who was subsequently identified as Phillip Hall Jr., exiting the back door of the residence. Officer Frazier detected the odor of burnt marijuana coming from Hall's clothing. Officer Boynton maintained visual contact with Henderson's residence while Officer Frazier interviewed Hall at a nearby location. Hall admitted to Officer Frazier that he had smoked marijuana inside Henderson's apartment, that he had purchased marijuana from Henderson, and that he had previously purchased marijuana from Henderson on numerous occasions.

[5] While Officer Frazier was speaking to Hall, Officer Boynton reported a steady stream of vehicle and foot traffic coming to and from Henderson's residence. Based on the information received from Hall, Officer Frazier obtained a search warrant for Henderson's residence. Officer Boynton and a member of the MCDTF maintained visual contact with Henderson's residence while Officer Frazier completed the process of obtaining a search warrant.

[6] Upon searching Henderson's residence, officers recovered cocaine, heroin, marijuana, and various prescription medications from Henderson's residence. Henderson did not have a valid prescription for the prescription medications which were subsequently identified as schedule II and IV narcotics. Officers

also recovered digital scales and a ledger containing names and dollar amounts next to the names.

[7] On September 20, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Henderson with Class B felony possession of a narcotic drug, *i.e.*, heroin, Class B felony possession of cocaine, Class D felony maintaining a common nuisance, and Class A misdemeanor dealing in marijuana. The State also alleged that Henderson was a habitual offender. On April 17, 2014, Henderson pled guilty as charged.[1] The trial court accepted Henderson's guilty plea and subsequently sentenced him to an aggregate term of sixteen years, with twelve years executed in the Department of Correction ("DOC") and four years suspended to probation.

# Discussion and Decision

[8] On appeal, Henderson contends that the trial court abused its discretion in sentencing him. Henderson also contends that his aggregate sixteen-year sentence is inappropriate in light of the nature of his offenses and his character. We disagree.

---

[1] Based on our review of the record, it does not appear that Henderson admitted to being a habitual offender or that the trial court made a finding as to whether Henderson qualified as a habitual offender.

# I. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91. A single aggravating factor may support an enhanced sentence. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993).

Henderson claims that the trial court abused its discretion by finding his high Indiana Risk Assessment System ("IRAS") score to be an aggravating factor during sentencing. The Indiana Supreme Court has held that assessment tools such as the IRAS "are sufficiently reliable to warrant consideration of their resulting scores and/or narrative assessments with the other relevant

information presented to a trial court for purposes of sentencing." *Malenchik v. State*, 928 N.E.2d 564, 574 (Ind. 2010).

> Such assessment instruments enable a sentencing judge to more effectively evaluate and weigh several express statutory sentencing considerations such as criminal history, the likelihood of affirmative response to probation or short term imprisonment, and the character and attitudes indicating that a defendant "is unlikely to commit another crime." Ind. Code § 35-38-1-7.1(a)(2), (b)(6)-(8). Furthermore, even apart from these statutory criteria, which "do not limit the matters that the court may consider in determining the sentence," Ind. Code § 35-38-1-7.1(c), the offender's scores and/or narrative assessment results may be considered by a trial judge in reaching an informed sentencing decision.

*Id*.

[11] The Indiana Supreme Court further held that "supporting research convincingly shows that offender risk assessment instruments, which are substantially based on such personal and sociological data, are effective in predicting the risk of recidivism and the amenability to rehabilitative treatment." *Id*. (citations omitted). "Because of such established materiality, we discern no impropriety in [these risk-assessment] scores being considered as a supplemental source of information to assist a trial court in formulating the manner a sentence is to be served." *Id*. at 575. "Such instruments endeavor to provide usable information based on extensive penal and sociological research to assist the trial judge in crafting individualized sentencing schemes with a maximum potential for reformation." *Id*. However, while the Indiana Supreme Court held that the results of offender-assessment instruments, such as the IRAS, are appropriate

supplemental tools for judicial consideration at sentencing, these evaluations and their scores are not intended to serve as aggravating or mitigating circumstances nor to determine the gross length of sentence, but a trial court may employ such results in formulating the manner in which a sentence is to be served. *Id.*

[12] Upon review, we observe that contrary to Henderson's claim in this regard, the trial court did not find his high IRAS score to be an aggravating factor during sentencing. The written sentencing order lists the aggravating factors as Henderson's serious prior criminal history and the number of offenses he committed in one instance. The trial court did not mention Henderson's high IRAS score in explaining Henderson's sentence in the written sentencing order. Further, while the trial court did mention Henderson's high IRAS score in its verbal sentencing statement, review of the record indicates that the trial court merely considered Henderson's high IRAS score together with both the aggravating and mitigating factors that were presented by the parties during the sentencing hearing. Specifically, the trial court stated the following:

> You seem like you're fairly in tune with some of the things that you've done wrong, you have some insight into your own behavior. And the person who I see described here in the P.S.I. is frankly a fairly dangerous person. And if I were just to meet you without knowing that about you, I wouldn't guess that you had that kind of history. But I know as the sentencing judge here that you do because I've seen that P.S.I. So while I can certainly have some sympathy for you in the description of your circumstances that you've given here in court, I can't ignore the things that I see in the P.S.I. And I have to sentence you based on the totality of your circumstances, which includes all those bad things that you bring forward. You have a very serious

criminal history and that is a significant aggravating factor. And further aggravation here is the fact that the defendant has a number of serious drug charges which are being pled guilty to all at the same time. This isn't just one Class B Felony, it's a number of different serious felony convictions, drug related. So the serious history and the number of offenses here are the primary aggravation. In terms of mitigation, I think that Mr. Henderson, as he sits here today, is sincerely remorseful for the situation in which he's placed himself. The defendant did plead guilty and accept responsibility here. It did happen late in the process, it was at a trial readiness hearing which happened just a few days before the scheduled jury trial. So it's a little bit different than someone who comes in a month or two (2) after their initial hearing and takes responsibility right away. There was a period of time that went by. But it's still a mitigator and it should be mentioned as a mitigator.… Yes, absolutely, there was not a benefit of any protection from a plea agreement that limited his exposure here, he simply pled guilty and that is certainly another important factor to point out.… As mentioned by the parties, the defendant does have a high IRAS score indicating a high risk of recidivism and a high need for services. When I weigh these things out, the court does find that the aggravation does outweigh the mitigation. Mr. Henderson, I don't have a high degree of optimism that community corrections alone here would be adequate to address your needs so there is gonna be a Department of Corrections component to this sentence. Sentences are gonna be entered as follows: On the B Felony counts, Counts I and II, defendant is sentenced to the Department of Corrections for sixteen (16) years, of which twelve (12) years will be executed, the other four (4) suspended and served on probation.… After the B's we jump down to the D Felony, Maintaining a Common Nuisance under Count III, and there will be a two (2) year commitment to the DOC, all executed. And Count IV, the A Misdemeanor, one (1) year in the DOC, all executed. Counts run concurrently with each other for a total of sixteen (16) years, twelve (12) executed and four (4) suspended.

Tr. pp. 37-39. The trial court's oral sentencing statement, coupled with the written sentencing order, make it clear that while the trial court did consider Henderson's high IRAS score when sentencing Henderson, the trial court did

not specifically find the score to be an aggravating factor during sentencing. Again, the Indiana Supreme Court has held that it is proper for the trial court to consider such a score when crafting a defendant's sentence.

[13] Furthermore, to the extent that Henderson claims that the trial court abused its discretion in failing to find Henderson's substance abuse to be a mitigating factor, we observe that long-standing Indiana Supreme Court precedent indicates that the trial court was not required to do so. *See James v. State*, 643 N.E.2d 321, 323 (Ind. 1994) (providing that a trial court is not required to consider allegations of a defendant's substance abuse as a mitigating circumstance). Additionally, to the extent that Henderson also claims that the trial court abused its discretion in applying weight to the aggravating and mitigating factors, we observe that the Indiana Supreme Court has long held that a trial court is not required to weigh or credit aggravating and mitigating factors the way an appellant suggests it should be weighed or credited. *Fugate*, 608 N.E.2d at 1374. Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Anglemyer*, 868 N.E.2d at 491. As such, the trial court did not abuse its discretion in sentencing Henderson.

# II. Appropriateness of Sentence

[14] Henderson also contends that his aggregate sixteen-year sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[15] With respect to the nature of Henderson's offenses, the record demonstrates that Henderson sold drugs out of his residence, which was within 1000 feet of a public park. The search of Henderson's residence revealed that he possessed cocaine, heroin, and marijuana. He also possessed drug paraphernalia, including digital scales and a ledger which contained customer names and specific dollar amounts next to the customers' names. The record revealed that Henderson committed numerous offenses at once, and witnesses discovered in or leaving Henderson's apartment admitted to police that they had smoked marijuana with Henderson in his residence on the day in question. One of

these witnesses further admitted to police that he had purchased marijuana from Henderson on many occasions. We find it troubling that Henderson was not simply a "one time" offender, but rather was an active participant in the sale of drugs in Madison County who repeatedly took drugs in and sold drugs from his residence, which again was located within 1000 feet of a public park.

[16] Further, we disagree with Henderson's assertion that the record indicates he is of good character. Rather, we find that review of Henderson's character is troubling. Henderson points to the fact that he was steadily employed for a 10-year period between 1996 and 2006. Henderson now relies on disability benefits to provide support for his eight children. While there is no shame in receiving disability benefits, these benefits appear to supplement the regular income that Henderson receives in connection with his sale of drugs. In addition, while Henderson did demonstrate remorse and accept responsibility for his actions by pleading guilty, his decision to do so could easily be considered to be a tactical decision as he waited until a short time before his jury trial was scheduled to do so.

[17] Henderson also has an extensive criminal history which includes both felony and misdemeanor convictions. Specifically, his criminal history includes convictions for domestic battery, criminal confinement, intimidation, stalking, resisting law enforcement, and contributing to a minor. His criminal history also includes prior probation violations. In addition, at the time he committed the instant offenses, Henderson was out on bond awaiting trial for felony charges of strangulation, domestic battery, and criminal confinement, which

reflects poorly on his character. Henderson's criminal history indicates an unwillingness to reform his behavior to conform to the rules of society. In light of the facts surrounding the nature of Henderson's offenses and his character, we conclude that Henderson has failed to meet his burden of persuading us that his aggregate sixteen-year sentence is inappropriate.

## Conclusion

[18] In sum, we conclude that the trial court acted within its discretion in sentencing Henderson and that Henderson failed to meet his burden of proving that his aggregate sixteen-year sentence is inappropriate.

[19] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.