# IN THE COURT OF APPEALS OF IOWA

No. 17-0589
Filed May 2, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MONTEZ GUISE,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen D. Weiland, Judge.

Montez Guise challenges the district court's use of a risk assessment tool in sentencing him. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Heard En Banc.

**VAITHESWARAN, Judge.**

We must decide whether the district court abused its discretion in considering the "Iowa Risk Revised" in sentencing a defendant to prison.

*I.     Background Proceedings*

Montez Guise kicked down the door of his ex-girlfriend's apartment, in violation of a no-contact order. He pled guilty to second-degree burglary.

The department of correctional services prepared a presentence investigation report (PSI), which included the following sentence: "As part of the PSI interview process an Iowa Risk Revised was completed indicating the Defendant should be supervised at an intensive level." The officer who prepared the report recommended imprisonment.

At the sentencing hearing, the prosecutor recommended a suspended sentence and probation, as set forth in the written plea agreement. The district court rejected the recommendation, relying in part on the PSI evaluator's reference to the need for intensive supervision. The court's complete reasoning was as follows:

> Mr. Guise, [defense counsel] has probably talked to you about the three goals that I am supposed to aim for when I am deciding a sentence for you. They are your rehabilitation, protection of society, and deterrence, meaning trying to convince you and other people not to perform criminal acts, so those three goals I keep in mind when I apply what I've learned about you from the case file, from the presentence investigation, and from what you folks have told me today.
>      The whole of that information convinces me that you cannot be rehabilitated in the community and that you are a danger to society if we keep you in the community. You may well have a good heart, I have no reason to think otherwise, but both things can be true. You can be dangerous to us, you can be difficult to rehabilitate in the community when you still have a good heart because sometimes intentions are not enough. Your criminal history is

significant in itself but includes a number of probation and parole revocations. When you were on partial release for this matter, you had a new charge and resisted arrest—or interfered with official acts, I should say, when the police tried to execute a warrant for you when you had been released when you'd been convicted for this. That doesn't bode well for us being able to help you with treatment and other things that you need in society and in the community. *The presentence investigator also noted that you need intensive—I don't want to say supervision. I have to get the right word that they used. It is supervision. That your risk level is such that you should be supervised at an intensive level. So for that reason, I'm not accepting the plea agreement.*

(Emphasis added.) The court sentenced Guise to a prison term not exceeding ten years.

On appeal, Guise (1) challenges the district court's reliance on the "Iowa Risk Revised" (IRR) and (2) contends the district court considered an "unproven allegation" of assault in sentencing him.

## II. *Iowa Risk Revised*

Guise maintains "the consideration of the IRR assessment violated [his] due process rights." In the alternative, he argues, the sentencing court's consideration of and reliance on the IRR "was an abuse of discretion." Finally, he raises an ineffective assistance of counsel claim, arguing "[i]f error was not preserved, . . . he was prejudiced by counsel's failure."

The State responds by questioning whether Guise preserved error on his "constitutional challenge to certain unobjected to evidence used in sentencing him." The State does not raise an error preservation concern with respect to the alternative abuse of discretion argument.[1]

---

[1] We acknowledge that defense counsel's failure to object to the contents of the PSI ordinarily constitutes a failure to preserve error. The fact that the Iowa Department of Corrections and the parole board rely upon risk assessments scores to make some of

We find it unnecessary to address the constitutional argument, either directly or under an ineffective-assistance-of-counsel rubric.  *Cf. Crowell v. State Pub. Def.*, 845 N.W.2d 676, 689 (Iowa 2014) ("Ordinarily, we look to statutory issues first in order to avoid unnecessary constitutional questions.").  We will focus on the alternative argument—whether the district court abused its discretion in using the IRR in the sentencing decision.  *See State v. Boltz*, 542 N.W.2d 9, 10 (Iowa 1995) (reviewing court's application of sentencing factors for an abuse of discretion).  We proceed to the merits.

Much has been written about risk assessment tools and their use in various criminal contexts, including sentencing.  *See*, *e.g.*, Paula M. Casey et al., National Center for State Courts (NCSC), *Using Offender Risk and Needs Assessment Information at Sentencing: Guidance for Courts from a National Working Group* (2011), http://www.ncsc.org/~/media/microsites/files/csi/rna% 20guide%20final.ashx; Jessica Corey, *Risky Business: Critiquing Pennsylvania's Actuarial Risk Assessment in Sentencing*, 7 Colum. J. Race & L. 150 (2016); Jessica M. Eaglin, *Constructing Recidivism Risk*, 67 Emory L.J. 59 (2017); Melissa Hamilton, *Back to the Future: The Influence of Criminal History on Risk Assessments*, 20 Berkeley J. Crim. L. 75 (2015); Cecilia Klingele, *The Promises*

---

their decisions does not make it a permissible sentencing factor.  Moreover, we are not convinced Guise or his attorney would have envisioned that what was proper for the PSI writer to consider in making a recommendation for probation considerations would be improperly used by the district court as a basis to imprison the defendant.  Much like the defendant's race may be identified in a PSI, defense counsel would not envision that a court would rely upon race as a basis to imprison the defendant and feel a need to object to the PSI on that basis.  And certainly no one would question that race would be an improper sentencing factor.  Thus, we conclude Guise's failure to object to the PSI does not raise an error preservation issue*. See State v. Grandberry*, 619 N.W.2d 399, 401-02 (Iowa 2000).

*and Perils of Evidence-Based Corrections*, 91 Notre Dame L. Rev. 537 (2015); Dawinder S. Sidhu, *Moneyball Sentencing*, 56 B.C. L. Rev. 671 (2015).

Virtually nothing has been written about the IRR assessment tool. *See* Iowa Dep't of Corr., Iowa Board of Corrections Agenda (April 7, 2017), https://doc.iowa.gov/sites/default/files/documents/2017/04/april_7_2017_board_ of_corrections_handouts_-_mpcf_1.pdf[2]; Legislative Servies Agency, Budget Unit Brief FY 2017: Iowa Corrections Offender Network (Rev. 09/06/2016), https://www.legis.iowa.gov/docs/publications/FT/15690.pdf.

The State does not cite a statute, rule, or manual authorizing use of the IRR in sentencing. *Cf*. Ky. Rev. Stat. Ann. § 532.007(3)(a) (2017) ("Sentencing judges shall consider . . . the results of a defendant's risk and needs assessment included in the presentence investigation."); La. Stat. Ann. § 15:326(A) (providing certain Louisiana courts "may use a single presentence investigation validated risk and needs assessment tool prior to sentencing an adult offender"); Ohio Rev. Code Ann. § 5120.114(A)(1)-(3) (stating Ohio's department of rehabilitation and correction "shall select a single validated risk assessment tool for adult offenders"

---

[2] Guise and the State cite the department of corrections' April 7, 2017 handout, which defines the IRR as follows:

> IRR-Iowa Risk Revised Assessment—screening tool for assessing risk. It takes into consideration several factors; for example - age, criminal history, gang affiliation, prior revocations in the community. The assessment helps determine risk of violence and victimization as well as predicting general recidivism. It includes several dynamic factors not included in the [Iowa Violence and Victimization Assessment]—employment, housing instability, substance abuse, prior revocations.

Guise's sentencing hearing took place on March 20, 2017, before the date of the handout. If the IRR definition as set forth above was in existence at the time of sentencing, the State did not offer or admit a document or other evidence of this definition, nor did the PSI evaluator refer to the definition.

that shall be used for various purposes including sentencing); 42 Pa. Stat. and Cons. State. Ann. § 2154.7(a) ("The commission shall adopt a sentence risk assessment instrument for the sentencing court to use to help determine the appropriate sentence within the limits established by law. . . ."). Nor can we find such authority.

Iowa Code section 901.2(1) authorizes the district court to receive "any information which may be offered which is relevant to the question of sentencing." Relevance is the key. On this record, we only know that the IRR authorized intensive supervision. We do not know what the IRR is, what factors led to the recommendation of intensive supervision, or whether the factors were appropriate for consideration in the sentencing context. It is impossible to determine whether the IRR was relevant to the question of sentencing within the meaning of section 901.2(1).

We turn to sections 901.5 and 901.3(1)(a). Section 901.5 authorizes the court to "receiv[e] and examin[e] all pertinent information, including the presentence investigation report." Section 901.3(1)(a) authorizes a presentence investigator to inquire into "[t]he defendant's characteristics, family and financial circumstances, needs, and potentialities." Again, we do not know whether the IRR bears on these factors. If the IRR is "pertinent" information for purposes of sentencing and relates to the defendant's "needs" or "potentialities," the district court and the reviewing court should know how and why. As it stands, the PSI report's single reference to the "Iowa Risk Revised" is devoid of context. The IRR could encompass impermissible factors such as unproven charges or it could

include unreliable factors. We simply do not know. And, on this record, neither did the district court.

We conclude the broad general language of the cited provisions cannot be read to authorize the use of an unspecified algorithm in sentencing (if that is what the IRR is). *See State v. Lopez*, 872 N.W.2d 159, 176 n.4 (Iowa 2015) (concluding a more specific statute controlled over the general language of these provisions). Even courts that have approved the use of algorithms at sentencing have set paramaters for their use. *See Malenchik v. State*, 928 N.E.2d 564, 574 (Ind. 2010) (concluding results of certain offender assessment instruments "are appropriate supplemental tools for judicial consideration at sentencing"); *State v. Loomis*, 881 N.W.2d 749, 753 (Wis. 2016) (concluding "if used properly, . . . a circuit court's consideration of a . . . risk assessment at sentencing does not violate a defendant's right to due process"). Our record contains no parameters.

This brings us to subsections 901.11(1), (2), and (3), which are more specific. Section 901.11 is titled "Parole or work release eligibility determination—certain drug, child endangerment, and robbery offenses." Subsection 901.11(1) authorizes consideration of a "validated risk assessment" to determine when a person "shall first become eligible for parole or work release." Subsections 901.11(2) and (3) authorize consideration of a "validated risk assessment" for the same purpose where the convictions are for child endangerment or robbery. Like the more general statutes, these provisions say nothing about the use of risk assessment tools in the sentencing decision. They do not expressly or impliedly authorize the use of the IRR in sentencing for second-degree burglary. But, even if they did, nothing in our record indicates the IRR was a validated risk assessment

tool. *See* Eaglin, 67 Emory L.J. at 119 ("Those using the tools must be able to interpret the results. . . .").

In sum, we find no legislative authority supporting the use of the IRR at sentencing. We also are unaware of any properly promulgated agency rules addressing the subject. In the absence of legislative or administrative authority with the force of law, we need not reach the question of how the IRR should be used at sentencing and, specifically, whether the instrument should be used only as a mitigating rather than an aggravating factor.[3]

We return to our record. As noted, the PSI evaluator referred to the IRR in recommending intensive supervision and the district court relied on the recommendation in sentencing Guise. To reiterate, our record contains no information on what the IRR was intended to measure, how it was scored, what factors were considered in arriving at a score, or how the PSI evaluator applied the test to Guise. *See* Klingele, 91 Notre Dame L. Rev. at 576 ("As an initial matter, risk is a squishy concept and its variations (low, medium, and high) are subject to all manner of manipulation."). The IRR as described in Guise's PSI report was a black box, devoid of transparency.

Without information allowing the court to gauge the IRR's reliability, the court's use of the test in the sentencing decision amounted to an abuse of discretion. *See State v. White*, 903 N.W.2d 331, 333-34 (Iowa 2017) (finding the sentencing court abused its discretion when it drew "critical conclusions" that were

---

[3] We do not suggest the IRR can never be used in sentencing. But, at a minimum, its use must be predicated on legislative or administrative authorization, scientific validation of the instrument, and an explanation of the underlying factors and scoring methodology.

"not grounded in science but rather based on generalized attitudes of criminal behavior"); *cf. Loomis*, 881 N.W.2d at 763-64 ("[A]ny PSI containing a [Correctional Offender Management Profiling for Alternative Sanctions (COMPAS)] risk assessment must inform the sentencing court about the following cautions regarding a COMPAS risk assessment's accuracy: (1) the proprietary nature of COMPAS has been invoked to prevent disclosure of information relating to how factors are weighed or how risk scores are to be determined; (2) risk assessment compares defendants to a national sample, but no cross-validation study for a Wisconsin population has yet been completed; (3) some studies of COMPAS risk assessment scores have raised questions about whether they disproportionately classify minority offenders as having a higher risk of recidivism; and (4) risk assessment tools must be constantly monitored and re-normed for accuracy due to changing populations and subpopulations."); Klingele, 91 Notre Dame L. Rev. at 576 ("[R]isk assessment tools provide a good example of evidence-based practices that have been promulgated with insufficient attention to their limitations."); *see also* Eaglin, 67 Emory L.J. at 64, 88 ("Actuarial risk assessment tools obscure difficult normative choices about the administration of criminal justice. . . . With actuarial risk tools, normative judgments are more difficult or even impossible to discern."). We vacate the sentence and remand for resentencing without consideration of the IRR on this state of the record.

## III. *Assault*

At sentencing, the district court referred to a domestic abuse surcharge. Defense counsel responded by informing the court, "There would be no domestic abuse surcharge on this." The court quickly corrected itself, stating, "[I]t's a

burglary, so you're right." In that context, the court also stated, "I was thinking about the underlying assault."

Guise contends the district court considered an unproven offense of assault. *See State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) ("If a court in determining a sentence uses any improper consideration, resentencing of the defendant is required."). We disagree. The court did not find Guise committed an assault. And, as Guise concedes, intent to commit an assault was an element of second-degree burglary. *See* Iowa Code § 713.1 (2016) ("Any person, having the intent to commit a felony, assault or theft. . . ."). Finally, Guise admitted he possessed assaultive intent. We conclude the court did not consider an unproven offense.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Danilson, C.J., and Potterfield, Tabor, and Bower, JJ., concur; Vogel, Doyle, Mullins,and McDonald, JJ, dissent.

**MCDONALD, Judge** (dissenting)

At issue in this case is a single, unchallenged sentence contained in a nineteen-page presentence investigation report: "As part of the PSI interview process an Iowa Risk Revised was completed indicating the Defendant should be supervised at an intensive level." Guise contends the district court's consideration of this single, unchallenged sentence violated his right to due process and constituted an abuse of discretion. The majority does not address the defendant's constitutional claim, but the majority holds the district court's consideration of this single, unchallenged sentence constituted an abuse of discretion. In so holding, the majority does not address the claim Guise presents on appeal. Instead, the majority undertakes the role of advocate and raises claims not raised or briefed by the parties. Even then, the majority wrongly decides the issues it raises. I dissent.

I

Guise presents a narrow due process challenge to his sentence. He contends the district court's consideration of the statement regarding the risk assessment deprived him of due process when the statement was considered without "sufficient cautions for and limitations of the risk assessment tools." Specifically, he contends the presentence investigation report should have contained the following cautionary instructions or advisories: "1) the risk assessment scores are based on group data and not specific to this individual defendant; (2) the existence of validation studies, including any cross-validation for an Iowa population; (3) the extent of the disclosure of the information used to determine the score such as question and answers with the formulas used; and

(4) the purpose of the tool and that the risk assessment tools were not developed for use at sentencing." Guise's due process claim, as presented, fails.

A.

To determine whether due process requires a sentencing court be given cautionary instructions regarding the use of risk assessment information, it is first necessary to establish what limits, if any, due process imposes on sentencing proceedings.

The Fourteenth Amendment to the Federal Constitution provides no state shall "deprive any person of life, liberty, or property, without due process." Article I section 9 of the Iowa Constitution provides the same textual guarantee, stating "[N]o person shall be deprived of life, liberty, or property, without due process of law." The federal and state guarantees of due process apply to sentencing proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (noting the imposition of sentence is part of the criminal prosecution for due process purposes); *State v. Delano*, 161 N.W.2d 66, 72 (Iowa 1968) (stating that sentencing proceedings need not "conform with all of the requirements of a criminal trial or even of the usual administrative hearing . . . but the hearing must measure up to the essentials of due process and fair treatment").

Federal due process places very few limitations on the categories or sources of information a sentencing court may consider in crafting and imposing sentence. The sentencing court may not consider the defendant's race, religion, or political affiliation (and presumably, other irrelevant classifications). *See Zant v. Stephens*, 462 U.S. 862, 885 (1983). In addition, the Supreme Court has stated due process protects a defendant from being sentenced based on materially false

information the defendant did not have an opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *West v. United States*, 994 F.2d 510, 512 (8th Cir. 1993) (stating a defendant is not deprived of constitutional process when sentenced on incomplete or inaccurate information "as long as the defendant was afforded an adequate opportunity to challenge the information"). With these limited exceptions, the Supreme Court has repeatedly "reaffirmed the fundamental sentencing principle that a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (stating sentencing courts have wide discretion in the type and sources of information considered at sentencing); *Pepper v. United States*, 562 U.S. 476, 488 (2011) (stating the sentencing court is allowed "to consider the widest possible breadth of information" in imposing sentence).

Like the federal due process clause, the state due process clause does not impose any significant limitation on the categories or sources of information that can be considered at sentencing so long as the defendant had the opportunity to object to the information. The controlling case is *Delano*. 161 N.W.2d 66. In that case, the defendant challenged his sentence on the ground the district court received "information concerning the social and economic background and other offenses of the accused." *Id.* at 69. The Iowa Supreme Court stated the sentencing court may rely on any information to which the defendant did not object. *See id.* at 70. The court explained no violation could be found when neither defense counsel "nor defendant objected to the [presentence] report or made any

effort to refute any part of it." *Id.* at 71. The court further stated the "defendant was well aware of the trial court's use of the presentence report . . . [and] [h]e did not see fit to make an objection . . . . We must assume that, in the absence of evidence to the contrary, the court made proper use of the report." *Id.*

Similarly, in *Rinehart v. State*, 234 N.W.2d 649, 651 (Iowa 1975), the Iowa Supreme Court rejected a due process challenge that the defendant's "sentence . . . was predicated upon an improper basis." In that case, the sentencing judge took a "trip to Iowa City" and engaged in an "ex parte conversation" with a doctor who had examined the defendant. *See id.* at 660. In rejecting the defendant's due process claim, the supreme court explained "[d]ue process at sentencing does not require a full panoply of trial procedures." *Id.* at 661. The court reasoned due process was satisfied because the sentencing judge had disclosed the substance of the trip to counsel in a letter written by the doctor and "[a]t no time in the proceedings did counsel request they be afforded a fair opportunity to controvert the contents of the letter." *Id.* at 660.

The general rule that a sentencing court may consider any category of information from any source is deeply-rooted in our historical traditions. "[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York*, 337 U.S. 241, 246 (1949). For example, "[o]ut-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the

personalities and backgrounds of convicted offenders." *Id.* In addition, due process allows judges to consider "reports made by probation officers containing information about a convicted defendant, including such information as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant." *Id.*

The historical rule is supported by "sound practical reasons." *Id.* For criminal trials, courts have fashioned rules of evidence that "narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged." *Id.* at 247. The rules of evidence are designed, in part, to prevent the finder of fact "from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct." *Id.* "A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined." *Id.* The concerns relating to the determination of guilt are not present at sentencing. Thus, "a sentencing judge [should] not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Id.*

With these constitutional principles in mind, it is clear the minimal dictates of due process have been satisfied in this case. Due process does not restrict the district court from considering risk assessment information. The risk assessment information was presented in a permissible presentence investigation report. *See Williams*, 337 U.S. at 249–50 (observing such "reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive

sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation"). Counsel was provided with the presentence investigation report at least one week prior to sentencing in compliance with the Code. *See* Iowa Code § 901.4 (2017) (providing defense counsel shall have access to the presentence investigation report at least three days prior to sentencing); *cf. State v. Ashley*, 462 N.W.2d 279, 282 (Iowa 1990) (stating the "basic requirements of due process and fair notice have been codified in Iowa Code sections 901.3 and 901.4, and we believe that failure to provide the statutory notice renders such evidence inadmissible on the issue of sentencing"). At the sentencing hearing, the district court afforded the defendant the opportunity to make additions, corrections, or objections to the presentence investigation report. Defense counsel did raise one issue not material to this appeal. Other than this immaterial issue, defense counsel stated, "[W]e have no additions or other corrections, no objection to the Court considering it for sentencing purposes."

To the extent the defendant now contends cautionary instructions should have been contained in the presentence investigation report, it was the defendant's obligation to bring the issue to the district court's attention. *See Delano*, 161 N.W.2d at 71. The defendant's failure to request cautionary instructions at the time of sentencing forecloses his due process claim. *See, e.g, State v. Dursunov*, No. 35927, 2010 WL 9585664, at *2 (Idaho Ct. App. Mar. 17, 2010) ("There having been no objection to the psychosexual and polygraph examinations at the sentencing hearing, Dursunov cannot now claim a violation of due process through the court's reliance on those evaluations."); *State v. Walker*, 167 P.3d 879, 883

(Mont. 2007) (denying due process challenge where the defendant "never challenged the accuracy of the PSI during his own testimony before the sentencing court" and the defendant "had ample opportunity to explain, argue, or rebut the information in the PSI."). Constitutional due process does not require more than what was provided here.

B.

Because the due process clause does not prohibit the district court from considering risk assessment information contained in the presentence investigation report, it follows *a fortiori* the due process clause does not prohibit the district court from considering risk assessment information contained in the presentence investigation report in the absence of the requested cautionary instructions. Although the conclusion is beyond debate, further discussion is warranted.

In support of his argument, Guise relies heavily on *State v. Loomis*, 881 N.W.2d 749 (Wis. 2016), but his reliance is misplaced. In *Loomis*, the sentencing court considered the results of an actuarial risk assessment instrument (COMPAS) to support its decision to sentence the defendant to a term of incarceration. *See* 881 N.W.2d at 753. The defendant contended the sentencing court's consideration of the risk assessment violated his right to due process. *See id.* The court urged the use of cautionary instructions as a prophylactic measure to "avoid *potential* due process violations." *Id.* at 760 (emphasis added). However, the court affirmed the defendant's prison sentence and held that even though "the circuit court was unaware of the cautions . . . the circuit court's consideration of [the risk assessment tool] . . . *did not* violate Loomis's due process rights." *Id.* at 771

(emphasis added).  The court denied the defendant's due process claim because the record established the sentencing court's consideration of the risk assessment was but one of many factors considered by the sentencing court and not the "determinative factor" in deciding the defendant would be incarcerated.  *See id.*

As made apparent in the preceding paragraph, the primary case on which Guise relies for the proposition that a sentencing court's consideration of risk assessment information without cautionary instructions is a per se violation of due process actually holds to the contrary.  This understanding of *Loomis* was confirmed in a subsequent decision of the Wisconsin Court of Appeals.  In *State v. Jones*, No. 2015AP2211–CRNM, 2016 WL 8650489, at *1 (Wis. Ct. App. Nov. 29, 2016), the sentencing court considered the COMPAS risk assessment tool without cautionary instructions and sentenced the defendant to a term of incarceration.  The *Jones* court rejected a due process challenge to the defendant's sentence.  *See id.* at *5  ("Our review of the trial court's comments on the COMPAS report leads us to conclude there would be no arguable merit to assert that the trial court's use of the COMPAS report was improper or denied Jones due process.  The trial court commented on the report only briefly, and its comments implied that the report was one of many factors it was considering.").

There are additional reasons why *Loomis* does not advance Guise's position.  *Loomis* addressed the sentencing court's use of a proprietary risk assessment instrument—COMPAS.  In that case, the defendant complained he was unable to obtain information to challenge the risk assessment instrument due to the proprietary nature of the instrument.  It seems to me the use of a proprietary risk assessment for sentencing purposes, at least where the defendant objects and

is unable to obtain information sufficient to challenge the risk assessment, is inconsistent with, at minimum, Iowa concepts of due process requiring the defendant be provided with notice of the information to be used at sentencing and the opportunity to contest the same. Rather than reaching this conclusion, however, the *Loomis* court urged the use of cautionary instructions. This seems an unsatisfactory resolution of the problem. The use of proprietary information at sentencing deprives the defendant of any meaningful opportunity to challenge the assessment. Regardless, that case is not this case. Here, the risk assessment tool is the Iowa Risk Assessment Revised. This risk assessment tool is based on the Iowa Violence and Victimization Instrument with four additional community stability factors added to the assessment (employment, housing, substance abuse, and past revocations). The risk assessment is non-proprietary in nature, and the defendant would have had the ability to challenge the instrument and its result at sentencing if he chose to do so. He chose not to do so.

In addition, outside the context of proprietary risk assessments, *Loomis* provides no compelling rationale why cautionary instructions regarding the use of risk assessment information are necessary to satisfy the dictates of due process when the general rule is the sentencing court can access any category or source of information without any significant limitation. There is no historical practice of requiring a provider of information in a sentencing proceeding to also instruct the sentencing court on the appropriate and inappropriate inferences to be drawn from the information. Indeed, the practice is to the contrary. Medical information and mental-health information is routinely provided to the district court at sentencing without guidance. Is due process violated when the sentencing court considers a

presentence investigation report that contains a substance-abuse evaluation when the evaluation is not accompanied by adequate foundation establishing the credentials of the evaluator and the method of evaluation, cautionary instructions regarding the limitation of the substance-abuse evaluation, and instructions regarding the appropriate and inappropriate inferences to be drawn from the substance-abuse evaluation?  Mental-health evaluations?  Medical-history information?  The answer is clearly not.  The defendant's argument to the contrary is simply *ipsie dixit.*

Finally, Guise's proposed extension of *Loomis* to the facts and circumstances of this case presumes risk assessment information is sui generis and wholly beyond the comprehension of sentencing judges.  This presumption is without merit.  Risk assessment is not a new concept.  It is used in a variety of contexts, including insurance and medicine, among others.  With respect to criminal justice, "since shortly after the Civil War, American states have relied on some inchoate notion of risk assessment in applying the criminal sanction."  Steven L. Chanesenson & Jordan M. Hyatt, *The Use of Risk Assessment at Sentencing, Implications for Research and Policy* 3 (Villanovia Public Law and Legal Theory Working Paper Series 2016).  "The generally unexplained exercise of discretionary judicial sentencing authority is a prime example of a first-generation, clinical risk assessment.  Judges rely on their own subjective experience—and a largely unknown mix of factors specific to that defendant and the nature of the crime—to set a sentence within the parameters allowed by law."  *Id.*

An actuarial risk assessment can provide statistical information to the sentencing judge that mirrors first-generation clinical assessments of risk while

also providing a higher degree of transparency and consistency to the sentencing decision. *See id.* A recent brief of the National Center for State Courts provided a more complete explanation:

> Risk assessment instruments are used in many fields to predict the probability of various outcomes such as automobile accidents or medical conditions. In the criminal justice system, actuarial risk tools provide information on the probability of outcomes such as failing to appear in court after arrest, committing any new offense, or committing a specific type of re-offense (e.g., violent, sexual). Criminal justice research scientists develop risk assessment tools using sophisticated statistical methodologies to identify information that is most strongly correlated (or associated) with the specific outcome of interest such as criminal reoffending. Across numerous fields, assessments of risk informed by a formal risk assessment instrument have been found to be more accurate and reliable than those based on unstructured clinical judgment alone.

Pamela Casey, Jennifer Elek, & Roger Warren, National Center for State Courts, *Use of Risk and Needs Assessment in State Sentencing Proceedings* 1, 2 (Sept. 2017),http://www.ncsc.org/~/media/Microsites/Files/CSI/EBS%20RNA%20brief%20Sep%202017.ashx.

The use of actuarial risk assessment information is well established in Iowa. At the pretrial stage of criminal proceedings, Chief Justice Cady has advocated the use of actuarial risk assessment information "for judges to use in deciding whether to release or detain criminal defendants before trial." Chief Justice Mark S. Cady, Iowa Supreme Court, 2018 Iowa State of the Judiciary (Jan 10, 2018) https://www.iowacourts.gov/static/media/cms/ Final_2018_speech_with_cover_B650B18F74A4B.pdf. There are now pilot projects in the State using risk assessments as a relevant factor in the pretrial release decision. As noted by Chief Justice Cady, juvenile court officers and juvenile courts have used risk assessment analysis to provide targeted services to

juvenile offenders for over eight years. *See* Chief Justice Mark S. Cady, Iowa Supreme Court, 2017 Iowa State of the Judiciary (Jan 11, 2017). The legislature now *requires* the use of a risk assessment "[a]t the time of sentencing" to set the minimum sentence for certain drug, child endangerment, and robbery offenses. *See* Iowa Code § 901.11. The Board of Parole uses risk assessments in making parole and work-release decisions. Finally, actuarial risk assessments are routinely used in civil commitment proceedings relating to sexually violent predators. *See, e.g., In re Det. of Holtz*, 653 N.W.2d 613 (Iowa 2002).

The majority ignores the historical and common use of actuarial risk assessment information in all fields, including criminal justice, and instead treats actuarial risk assessment information like the punch-card prophecies of the precogs in Philip K. Dick's Minority Report. *See ante* at 7 ("We conclude the broad general language of the cited provisions cannot be read to authorize the use of an unspecified algorithm in sentencing (if that is what the IRR is).") Actuarial risk assessment information is not science fiction; it is actuarial science. Actuarial risk assessment information is not sui generis; it is evidence just like any other evidence. The sentencing court acts within its core competency in receiving the evidence, determining the appropriate inferences, if any, to be drawn from the evidence, and determining the weight of the evidence, all without cautionary instructions. *See State v. Farnum*, 397 N.W.2d 744, 750 (Iowa 1986) (stating the sentencing court was free to weigh and apply expert testimony); *see also Malenchik v. State,* 928 N.E.2d 564, 573 (Ind. 2010) ("We defer to the sound discernment and discretion of trial judges to give the [assessment] tools proper consideration and appropriate weight."); *Butler v. State*, 358 P.3d 1259, 1264

(Wyo. 2015) ("A district court is free . . . to consider PSIs and risk assessments, meaning it is also within its discretion to give these reports the weight the district court deems appropriate when imposing a sentence within the statutory range.").

The constitutional command of due process does not require an information provider to instruct a sentencing court on the appropriate uses of the information provided.  Guise has failed to establish a due process violation.

C.

The rejection of Guise's specific due process claim should not be interpreted as a rejection of any concern regarding the use of actuarial risk assessment tools in criminal proceedings.  As the National Center for State Courts has noted,

> Although incorporating offender assessment information into sentencing decisions can have great benefits, using it incorrectly (e.g., deciding a course of action without a proper understanding of what assessment results mean or placing an offender in an available rather than needed program) will be ineffective and could have the consequence of increasing recidivism. Jurisdictions need to carefully plan the incorporation of offender assessment information into the sentencing process to optimize its benefits.

Pamela M. Casey et al., National Center for State Courts, *Using Offender Risk and Needs Assessment Information at Sentencing: Guidance for Courts from a National Working Group*, 8 (2011), http://www.ncsc.org/~/media/microsites/files/csi/rna%20guide%20final.ashx; *see generally* Jessica Corey, *Risky Business: Critiquing Pennsylvania's Actuarial Risk Assessment in Sentencing*, 7 Colum. J. Race & L. 150 (2016); Jessica M. Eaglin, *Constructing Recidivism Risk*, 67 Emory L.J. 59 (2017); Melissa Hamilton, *Back to the Future: The Influence of Criminal History on Risk Assessments*, 20 Berkeley J. Crim. L. 75 (2015); Cecilia Klingele,

*The Promises and Perils of Evidence-Based Corrections*, 91 Notre Dame L. Rev. 537 (2015); Dawinder S. Sidhu, *Moneyball Sentencing*, 56 B.C. L. Rev. 671 (2015).

Instead, the rejection of Guise's constitutional argument should be interpreted to be a rejection of the constitutionalization of sentencing practice and procedure. "Robing garden variety claims . . . in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State v. Greene*, 727 A.2d 765, 774 (Conn. App. Ct. 1999). Not every error or claimed error in a criminal proceeding is of constitutional dimension. *See State v. Foy*, 574 N.W.2d 337, 339 (Iowa 1998); *see, e.g., Hill v. United States*, 368 U.S. 424, 428 (1962) (recognizing denial of allocution does not raise a constitutional claim); *State v. Hines*, 709 A.2d 522, 533 (Conn. 1998) (stating "it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right"); *State v. Patterson*, 580 A.2d 548, 549 (Conn. App. Ct. 1990) (concluding unpreserved claim that trial court considered improper testimony at sentencing was not constitutional in nature); *People v. Toepler*, No. 329017, 2016 WL 7130969, at *3 (Mich. Ct. App. Dec. 6, 2016) ("We first note that evidentiary errors, such as an erroneous decision to admit expert testimony, are not constitutional in nature."); *People v. Blackmon*, 761 N.W.2d 172, 177 (Mich. Ct. App. 2008) ("Although any error can potentially be argued to have deprived a defendant of his due-process fair-trial right, not every trial error is constitutional in nature. Merely framing an issue as constitutional does not make it so."); *Williams v. State*, 273 S.W.3d 200, 225 (Tex. Crim. App. 2008) (holding erroneous admission of victim-impact evidence was nonconstitutional error).

In Iowa, there are sufficient non-constitutional rules governing sentencing practice and procedure to provide guidance to district courts in the use of risk assessments and to allow appellate courts to police the use of risk assessments. For example, it is impermissible for the district court to use any single consideration as a determinative factor in sentencing. *See State v. Cooley*, 587 N.W.2d 752, 755 (Iowa 1998) (discussing the rule that "[e]ach sentencing decision must be made on an individual basis, and no single factor alone is determinative"). It is also impermissible for the district court to fail to exercise its sentencing discretion. *See State v. Wright*, 340 N.W.2d 590, 593 (Iowa 1983) (discussing cases in which judges impermissibly failed to exercise discretion); *State v. Gahagan*, No. 16-0209, 2017 WL 2461463, at *5 (Iowa Ct. App. June 7, 2017) (same). I am sure other issues will arise over the course of time, but they can be addressed on a case-by-case basis.

## D.

In sum, the district court did not violate Guise's right to due process at sentencing when it considered an unchallenged statement regarding risk assessment information contained within the presentence investigation report even when the presentence investigation report did not contain Guise's requested cautionary instructions. *See Malenchik*, 928 N.E.2d at 574 (noting due process is not violated by consideration of risk assessment evidence); *Loomis*, 881 N.W.2d at 771 (holding the defendant failed to prove a due process violation when the district court considered risk assessment information without cautionary instructions); *Jones*, 2016 WL 8650489, at *5 (holding due process was not

violated when the district court considered risk assessment information and sentenced the defendant to incarceration).

## II.

Guise's second claim is a limited claim that the district court abused its discretion in considering the risk assessment information without the guidance of his requested cautionary instructions. This is a carbon copy of his constitutional claim. Indeed, the entirety of Guise's argument regarding the district court's exercise of discretion is as follows:

> Without sufficient cautions and limitations provided, the consideration of the [Iowa Risk Revised] assessment violated Guise's due process rights. In the alternative it was an abuse of discretion on the part of the sentencing court.

At oral argument, Guise's counsel confirmed his claim related solely to the district court's consideration of the information without cautionary instructions.

To prove the district court abused its considerable sentencing discretion, Guise must overcome the strong presumption of regularity afforded the district court's sentencing decision. *See State v. Stanley*, 344 N.W.2d 564, 568 (Iowa Ct. App. 1983). Guise can overcome the presumption of regularity by making an affirmative showing that the trial court abused its discretion. As with Guise's due process claim, the threshold question is what limits, if any, Iowa sentencing law imposes on the categories or sources of information the district court could consider at sentencing.

Our state sentencing law provides virtually no limitation on the categories or sources of information to be used in sentencing. To the contrary, to assist the sentencing court in performing "the often arduous task of sentencing a criminal

offender," *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002), our State has made it a priority to provide the sentencing court with as much information as possible. The Code provides the district court "shall receive from the state, from the judicial district department of correctional services, and from the defendant any information which may be offered which is relevant to the question of sentencing." Iowa Code § 901.2(1). Among the information relevant to the question of sentencing is "the presentence investigation report." *Id.* § 901.5. "The primary function of the presentence investigation report is to provide pertinent information to aid the district court in sentencing." *State v. Uthe*, 541 N.W.2d 532, 533 (Iowa 1995). In preparing the presentence investigation report, the investigator shall collect information related to the crime, the defendant, and the victim, including information related to the defendant's "needs" and "potentialities." Iowa Code § 901.3(1)(a). Our case law provides for a similarly robust presentation of information to the sentencing court:

> The sentencing judge should be in possession of the fullest information possible concerning the defendant's life and characteristics and should not be denied an opportunity to obtain pertinent information by rigid adherence to restrictive rules of evidence properly applicable to trial. The judge may resort to such sources of information as he thinks might be helpful to his judgment as to sentencing. Defendant may not successfully challenge the soundness of the trial court's discretion even though it involved conclusions or matters not ordinarily admissible.

*Stanley*, 344 N.W.2d at 570.

It is clear from the Code and the case law that the district court may consider any information "relevant" or "pertinent" to sentencing. Actuarial risk assessment information is generally relevant to the sentencing function. A risk assessment "estimate[s] the probability that an individual will engage in violent or other criminal

conduct in the future." Model Penal Code: Sentencing § 6B.09, cmt. A (Am. Law Inst., Proposed Final Draft 2017). One of the central historical functions of any sentencing court is to conduct a first-generation clinical risk assessment of the offender. *See* Steven L. Chanesenson and Jordan M. Hyatt, *supra*, at 3. That is, in crafting and imposing sentence, the sentencing court considers the risk the defendant will reoffend and whether the defendant is amenable to supervision in the community. *See id.* Actuarial risk assessment information provides the sentencing court with evidence-based information relevant to both of these considerations. Risk assessment information speaks directly to the defendant's risk of recidivating, his amenability to supervision in the community, and thus his "propensities and chances of his reform." *State v. Stakenburg*, 215 N.W.2d 265, 267 (Iowa 1974); *see Malenchik*, 928 N.E.2d at 566 (holding "legitimate offender assessment instruments do not replace but may inform a trial court's sentencing determinations"); Pamela M. Casey et al., *supra*, at 7 ("Given the research . . . , the National Working Group recommends that judges have offender assessment information available to inform their decisions regarding risk management and reduction.").

The conclusion that actuarial risk assessment information is relevant to sentencing is not controversial and is nationally supported. In 2011, the National Conference of Chief Justices and Conference of State Court Administrators recommended that "offender risk and needs assessment information be available to inform judicial decisions regarding effective management and reduction of the risk of offender recidivism." Conference of Chief Justices and Conference of State Court Adm'rs, National Center for State Courts, *Resolution 7: In Support of the*

*Guiding Principles on Using Risk and Needs Assessment Information in the Sentencing Process*, (Aug. 3, 2011), http://www.ncsc.org/~/media/Microsites/FILES/CSI/Resolution-7.ashx.

Similarly, the American Law Institute has expressed its support for the use of risk assessment instruments in sentencing. The American Law Institute

> encourages the use of actuarial risk-assessment instruments as a regular part of the felony sentencing process. Actuarial—or statistical—predictions of risk, derived from objective criteria, have been found superior to clinical predictions built on the professional training, experience, and judgment of the persons making predictions. The superiority of actuarial over clinical tools in this arena is supported by more than 50 years of social-science research.

Model Penal Code: Sentencing § 6B.09, cmt. a.

In Iowa, risk assessment information has independent relevance beyond providing an evidence-based determination of the risk to reoffend. The presentence investigation writer's statement the defendant "should be supervised at an intensive level" based on the risk assessment independently signals to the district court information regarding the levels of sanctions, programs, and services available to supervise the defendant safely in the community and to facilitate the defendant's rehabilitation.

By way of background, Iowa's corrections scheme provides for five levels of sanctions, services, and programming for offenders pursuant to the corrections continuum. The corrections continuum ranges from level one for non-violent, low-risk offenders to level five for incarceration. *See* Iowa Code § 901B.1. Each judicial district and judicial district department of correctional services is required to implement an intermediate criminal sanctions program "structured around the corrections continuum" with different levels of sanctions, programs, and services

for defendants placed on probation and committed to the department of correctional services. *See id.* § 901B.1(2), (3). The intermediate criminal sanctions program encompasses level two, level three, and certain parts of level four upon the corrections continuum. The intermediate criminal sanctions program must identify the appropriate levels of sanctions, programs, and services for offenders "based upon a current risk assessment evaluation." Iowa Code § 901B.1(4) For example, depending on the risk assessment information, appropriate sanctions, programs, and services might include "electronic monitoring, day reporting, day programming, and institutional work release." Iowa Code § 901B.1(b)(3). The intermediate criminal sanctions program must be approved and adopted by the chief judge of the judicial district and the director of the judicial district department of correctional services. *See id.* § 901B.1(3)(a).

Against this backdrop, the duty of a sentencing judge in every case is to consider all of the available sentencing options, to give due consideration to all circumstances in the particular case, and to exercise that option which will best accomplish justice both for society and for the individual defendant. *See State v. McKeever*, 276 N.W.2d 385, 388 (Iowa 1979). The sentencing court's function is both backward-looking and forward-looking: backward looking in that the sentencing court must impose a sentence that provides justice in the individual case; forward looking in that the sentencing court must select a sentence that advances the "societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the community from further offenses." *Formaro*, 638 N.W.2d at 724.

With respect to felony sentencing in Iowa, the sentencing court has a limited range of available dispositions. The district court can impose the required judgment and sentence, which is incarceration for an indeterminate term not to exceed a maximum number of years as set forth in Iowa Code chapter 902. In certain circumstances, rather than imposing judgment, the district court may exercise its discretion, defer judgment, and place the defendant on probation. Iowa Code § 907.3(1)(a). In certain circumstances, rather than imposing sentence, the district court may exercise its discretion, defer sentencing, and "assign the defendant to supervision or services under section 901B.1 at the level of sanctions which the district department" of correctional services determined to be appropriate. Iowa Code § 907.3(2). Finally, in some circumstances, the district court may impose judgment and sentence but exercise its discretion, suspend the execution of the sentence, and place "the defendant on probation upon such terms and conditions as it may require," including commitment of the defendant "to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the department determines to be appropriate." *Id.* § 907.3(3). All of these considerations are based upon a "current risk assessment." Iowa Code § 901B.1(4)(a).

If it is not apparent from the preceding discussion, the presentence investigation writer's communication to the district court of the level of supervision within the continuum to be applied to the defendant if granted probation is independently relevant and important to the exercise of sentencing discretion. To further flesh out the issue, consider the facts and circumstances of this case.

Here, the second judicial district department of correctional services prepared the presentence investigation report for the district court. Based on the result of a risk assessment, the presentence investigation writer stated the defendant would be subject to intensive supervision. Because of this, the district court was made aware of the specific sanctions, programs, and services available to supervise the defendant and to facilitate rehabilitation of the defendant. For example, the Second Judicial District's Corrections Continuum Order provides that offenders subject to "intense supervision" may be subject to "the Community Transition Program, Drug Court, electronic monitoring, and Day Program Center participation." The presentence investigator's assessment that Guise was subject to "intense supervision" thus provided the district court with information pertinent, perhaps critical, to the informed exercise of the district court's discretion of above and beyond a simple statistical assessment of the probability of reoffending. *See* Pamela M. Casey et al., *supra*, at 14 ("Whether an offender is a good candidate for community supervision is a decision each court makes, based in part, on the availability of effective local supervision and treatment resources available to address the offender's specific risk factors.").

In sum, the Iowa Code and our case law expressly provide the district court may consider "any information" "relevant" or "pertinent" or "helpful" to sentencing. In Iowa, risk assessment information is relevant or pertinent or helpful to sentencing for two independent reasons. First, actuarial risk assessment information is relevant, generally, to the sentencing function because it provides evidence-based information regarding the offender's risk of reoffending and amenability to supervision in the community. This conclusion is not controversial;

it is supported by a fair reading of the Code and the relevant precedents; it is supported by the leading national authorities. Second, risk assessment information determines the level of supervision upon the continuum to which an offender will be placed, and the level of supervision provides the sentencing court with independently relevant information regarding the sanctions, programs, and services within the specific judicial district available to supervise the offender and to rehabilitate the offender. Because the substantive law of sentencing in Iowa does not prohibit the district court from considering risk assessment information contained in an unchallenged presentence investigation report, it follows *a fortiori* nothing prohibits the district court from considering risk assessment information contained in an unchallenged presentence investigation report in the absence of Guise's requested cautionary instructions.

## III.

The majority does not resolve Guise's constitutional claim or Guise's abuse-of-discretion claim. Instead, the majority raises and decides its own claims sua sponte and without notice to the parties. I respectfully disagree with the majority's resolution of the claims it asserts on Guise's behalf.

### A.

I disagree with the majority's decision to assume the role of advocate and advance claims on Guise's behalf. That is not this court's role. The court of appeals is a court of error correction. *See* Iowa Code § 602.5103 (providing the court of appeals "constitutes a court for correction of errors at law"). "Our obligation

on appeal is to decide the case within the framework of the issues raised by the parties." *Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010). "This court is not a roving commission that offers instinctual legal reactions to interesting issues that have not been raised or briefed by the parties and for which the record is often entirely inadequate if not completely barren. We decide only the concrete issues that were presented, litigated, and preserved in this case." *City of Davenport v. Seymour*, 755 N.W.2d 533, 545 (Iowa 2008).

By straying outside the record and outside the questions presented and briefed by the parties, the court "risk[s] making unsound decisions based on [its] own inadequately informed understanding of the . . . questions involved." *State v. Childs*, 898 N.W.2d 177, 194–95 (Iowa 2017). As Justice Gorsuch has noted, "[T]he crucible of adversarial testing is crucial to sound judicial decisionmaking. We rely on it to yield insights (or reveal pitfalls) we cannot muster guided only by our own lights." *Sessions v. Dimaya*, ___ S. Ct. ___, ___, 2018 WL 1800371, at *25 (2018) (Gorsuch, J., concurring).

B.

The risk of making unsound decisions based on inadequate understanding is demonstrated here. The rationale underlying the majority opinion is strained, contrary to long-established precedent regarding appellate review of sentencing, and internally inconsistent.

The majority opinion strains to reach the conclusion actuarial risk assessment information cannot be considered at sentencing. The Code provides the district court may consider "any information," "pertinent information," and any information related to the defendant's "needs" and "potentialities." Our case law

authorizes the district court to consider "such sources of information as he thinks might be helpful to his judgment as to sentencing." *Stanley*, 344 N.W.2d at 570. Any fair and objective reading of the Code and our case law would authorize the use of risk assessment information at sentencing. The majority nonetheless concludes the Iowa Risk Revised cannot be used because there is no "legislative or administrative authority with the force of law" specifically authorizing consideration of the Iowa Risk Assessment Revised. The majority's conclusion that "any information" does not include the Iowa Risk Assessment Revised because no provision of the Code specifically identifies the instrument defies common sense. *See Mall Real Estate, L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 201 (Iowa 2012) (Cady, C.J., dissenting) (noting statutes should not be interpreted in a way that "defies common sense"). The majority never explains why the legislature must authorize the use of this specific risk assessment when it already authorized the district court to consider any information. The majority's opinion is akin to concluding that "any information" does not include mental-health information referencing the DSM-V because the manual is not specifically identified in the Code. By way of another example of strained reasoning, the majority cites Iowa Code section 901.11 and represents that it says "nothing about the use of risk assessment tools in the sentencing decision." Ante at 7. Except it does. The cited provision explicitly states three times the sentencing court shall consider a risk assessment "[a]t the time of sentencing." Iowa Code § 901.11(1), (2), (3).

The majority opinion is also contrary to long established case law governing the appellate review of sentencing proceedings. First, "[sentencing] decisions of

the trial court are cloaked with a strong presumption in their favor." *Stanley*, 344 N.W.2d at 568. It is the defendant's burden to overcome the presumption of regularity by making an affirmative showing that the trial court abused its discretion. *See id.* As a court of error, we can "neither assume nor infer a judge failed to do so without clear evidence in the record to the contrary." *State v. Swenka*, No. 13-1821, 2014 WL 4631364, at *1 (Iowa Ct. App. Sept. 17, 2014); *see Formaro*, 638 N.W.2d at 725. But the majority does just that. For example, the majority states, "*We* do not know what the IRR is, what factors led to the recommendation of intensive supervision, or whether the factors were appropriate for consideration in the sentencing context." (Emphasis added). None of these questions are relevant to the issue. The fact the majority would like more information regarding this risk assessment tool does not mean the district court abused its discretion in considering the information. Perhaps the information is not in the sentencing record because the prosecutor, defense counsel, and the district court judge—people actually involved in sentencing hearings on a regular basis—already knew the information and saw no need to make additional record on the issue. But perhaps not. But the possibility they were familiar with the risk assessment instrument demonstrates why we presume regularity unless the defendant can *prove* irregularity on the record made. The majority's analysis turns the standard of review on its head.

Second, it is well established "[i]n determining a defendant's sentence a district court is free to consider portions of a presentence investigation report that are not challenged by the defendant." *State v. Grandberry*, 619 N.W.2d 399, 402 (Iowa 2000). This rule applies to uncontested "data in the presentence

investigation report obtained from other sources." *Id.* Here, the defendant was timely provided with the presentence investigation report and made no objection regarding the reference to the Iowa Risk Assessment Revised. In the absence of any objection to the presentence investigation report or any request the court consider cautionary instructions regarding the risk assessment report, the district court was free to rely on the information contained therein. *See State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998) (explaining the district court was free to consider mental-health evaluation contained in unchallenged presentence investigation report); *State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998) (finding the district court properly relied on defendant's statements in the presentence investigation report that amounted to an admission of other criminal activity because the statements were not challenged by defendant when he was given an opportunity to do so); *State v. Townsend*, 238 N.W.2d 351, 358 (Iowa 1976) (finding that district court acted properly in considering the presentence investigation report that contained psychiatric evaluation and recommendation defendant be placed in a semi-structured environment where the defendant did not challenge the pertinent parts of the report); *Delano*, 161 N.W.2d at 71 (finding consideration of presentence report proper absent objection); *State v. Thonethevaboth*, No. 05-1821, 2006 WL 1751295, at *1 (Iowa Ct. App. June 28, 2006) (holding error was not preserved where counsel did not object to the list of prior convictions set forth in presentence investigation report); *see also United States v. Dokes*, 872 F.3d 886, 889 (8th Cir. 2017) ("Unless a party objects 'with specificity and clarity' to fact statements in the PSR, the district court may accept those facts as true at sentencing."); *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998) (concluding

if defendant fails to submit affidavits or other evidence to rebut information contained in PSI, the sentencing court may adopt PSI without "further inquiry or explanation"); *United States v. Coleman*, 148 F.3d 897, 902 (8th Cir. 1998) (defendant waived right to object to court's reliance on PSI by failing to object either to the PSI itself or at the sentencing hearing); *United States v. Morillo*, 8 F.3d 864, 872–73 (1st Cir. 1993) (defendant cannot fault sentencing determination based on facts in PSI to which she did not object).

The majority's response to the *Grandberry* problem reveals the internal inconsistency within the majority opinion. On the one hand, the majority concludes the defendant did not need to object to the risk assessment in the PSI because the risk assessment is an impermissible sentencing factor akin to the race of the defendant. *See* Ante at 3 n.1. This seems in accord with the majority's view that risk assessment information is per se impermissible as not relevant and not authorized by the Code. On the other hand, the majority opinion concludes risk assessment information, generally, and the Iowa Risk Revised, specifically, could be considered if there were sufficient foundation laid to establish its reliability. *See* Ante at 8. Indeed, the majority remands the case for resentencing without consideration of the risk assessment "on this state of the record." Ante at 9. The majority never addresses or even attempts to resolve this inconsistency in this opinion. What foundation could the prosecutor make to allow the district to consider the risk assessment if the risk assessment is akin to the defendant's race? What foundation ameliorates the majority's concern that Iowa Risk Revised is not specifically identified in the Code?

In my view, risk assessment information is a relevant sentencing consideration. To the extent the majority contends the district court abused its discretion in considering the risk assessment without adequate foundation establishing the validity of the instrument, the argument misses the mark in several respects. First, the rules of evidence are inapplicable at sentencing proceedings. *See* Iowa R. Evid. 5.1101(c)(4). "Sentencing procedures are governed by different evidentiary rules than the trial itself. The sentencing judge should be in possession of the fullest information possible concerning the defendant's life and characteristics and should not be denied an opportunity to obtain pertinent information by rigid adherence to restrictive rules of evidence properly applicable to trial." *Stanley*, 344 N .W.2d at 570. Second, if there were concerns regarding the validity and use of the risk assessment tool, it was the defendant's obligation to raise an objection and make a record on the issue. *See Grandberry*, 619 N.W.2d at 402. This is the position taken by the American Law Institute:

> Instead, the revised Code "domesticates" the use of risk assessments by repositioning them in the open forum of the courtroom, where the tools devised by the sentencing commission are available for inspection, and where the constitution guarantees the offender legal representation to contest any adverse findings. This represents a significant constraint on the use of recidivism risk as a sentencing factor when compared with the current realities of American criminal justice.

Model Penal Code: Sentencing § 6B.09, cmt. a. Guise's failure to raise the issue with the sentencing court is fatal to his claim on appeal. *See State v. Buck*, No. 14-0723, 2015 WL 1046181, at *3 (Iowa Ct. App. Mar. 11, 2015) (concluding the defendant did not preserve his challenge to the district court's consideration of the sexual adjustment inventory at sentencing).

In sum, the majority's advocacy on Guise's behalf is uncompelling. A fair reading of the Code and our case law allows the district court to consider risk assessment information at the time of sentencing. To the extent the reliability of this particular instrument is at issue, it was the defendant's obligation to raise the issue with the sentencing court. In the absence of any challenge to the information, the district court was free to rely on the information.

IV.

I address one final issue. Guise argues his plea counsel was ineffective in failing to raise a challenge to the district court's consideration of the statement relating to the risk assessment and/or ineffective in failing to provide his requested instructions and cautions. To establish a claim of ineffective assistance of counsel, Guise must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The defendant must prove both elements by a preponderance of the evidence. *State v. Madsen*, 813 N.W.2d 714, 723 (Iowa 2012). Failure to prove either element is fatal to the claim. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal."). If the defendant fails to meet his burden on either element, the court need not address the other. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

Guise has failed to establish prejudice. To establish prejudice, Guise had to show a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. In the context of sentencing, the question presented is whether a challenge to the PSI would have "resulted in a more lenient sentence." *State v. Hopkins*, No. 13-1103, 2014 WL 3511820, at *4 (Iowa Ct. App. July 16, 2014). There is no reasonable likelihood of such a result. The district court cited numerous factors for its reason to impose sentence. It is clear from the sentencing transcript; Guise's criminal history was dispositive. He has been in and out of detention facilities, jails, and prisons since he was a juvenile. His criminal history is extensive, including adjudications and convictions for simple robbery, criminal damage to property, burglary on multiple occasions, terroristic threats, receiving stolen property, assault, interference with official acts, trespass, possession of a controlled substance, and domestic abuse assault. The presentence investigation report also showed Guise was not a good candidate for probation. He was revoked multiple times while on parole and probation. While he was on pretrial release, he obtained new charges of criminal mischief, possession of drug paraphernalia, and interference with official acts. An actuarial assessment was not necessary to conclude Guise was not a good candidate for probation.

## V.

For the foregoing reasons, I dissent.

Vogel, Doyle, and Mullins, JJ., join this dissent.

**VOGEL, Judge** (dissenting).

I join Judge McDonald's and Judge Mullins's dissents but write separately to emphasize two points.

Firstly, as Judge McDonald noted in his *State v. Gordon*[4] dissent, filed today, "Evidence-based risk assessment information can assist the sentencing judge in overcoming the limits of personal experience by providing access to empirical evidence." Even more than that, I believe the use of risk assessment tools provides more uniformity in sentencing from one defendant to the next and from one judicial district to the next, across the state of Iowa. In addition, the assessments, as neutral measures of standard characteristics, can serve to ameliorate implicit biases in sentencing and thus achieve our supreme court's stated goal "to improve justice." Chief Justice Mark S. Cady, Iowa Supreme Court, 2018 State of the Judiciary (Jan. 10, 2018), https://www.iowacourts.gov/static/media/cms/Final_2018_speech_with_cover_B6 50B18F74A4B.pdf (announcing "a new public safety assessment for judges to use in deciding whether to release or detain criminal defendants before trial. . . . Criminal offenders should be punished pursuant to a sentence prescribed by law, not by unnecessary and unfair consequences of the process of justice itself.")

Secondly, even if a risk assessment tool is not mentioned at sentencing, such a tool may have been used during the presentence investigation (PSI) process with its assessment imbedded within the PSI report. What obligation then does a sentencing judge have when reviewing the PSI? Must the sentencing judge

---

[4] *State v. Gordon*, No. 17-0395, ___ WL ___ (Iowa Ct. App. May 2, 2018).

disavow any consideration of an assessment tool within the PSI? How can a sentencing judge surgically extract such information from a PSI recommendation to satisfy the majority and assure the defendant that the tool in no way bore on the judge's sentencing decision?

Because the statewide use of risk assessment tools provides uniformity, and because the majority's opinion raises serious practical considerations for our sentencing judges, I respectfully dissent.

Doyle, Mullins and McDonald, JJ., join this dissent.

**DOYLE, Judge** (dissenting).

I join in the dissents, but write separately to address an issue that has troubled me for some time—the use of the term "abuse of discretion."

Guise had no objection to the district court considering for sentencing purposes the presentence investigation (PSI) report, which included the Iowa Risk Revised (IRR). Neither the legislature nor Iowa Supreme Court has yet to address the proper use of risk assessment tools in sentencing. Nevertheless, the majority finds the sentencing court abused its discretion in considering and relying on the IRR in sentencing Guise. "A district court abuses its discretion when it exercises its discretion on grounds *clearly untenable* or to an extent *clearly unreasonable*. A district court's 'ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.'" *State v Hill*, 878 N.W.2d 269, 272 (Iowa 2016) (emphasis added) (citations omitted).

"Abuse of discretion." Such a harsh term. It smacks of a deliberative wrongful act—like animal abuse, child abuse, domestic abuse, elder abuse, or sex abuse. Do we really want to imply the district court deliberately got it wrong? I think not. And saying "the district court abused its discretion" instead of "the judge abused his or her discretion" surely does nothing to reduce the sting to a judge on the receiving end of an appellate opinion.

So, I put out a call to abandon use of the term in circumstances like those presented here and suggest we replace it with something more fitting. There is precedent for employing a new term when the old one does not suit the circumstances. Claims relating to a prosecutor's behavior at trial have historically

been referred to as "prosecutorial misconduct." However, our supreme court recently adopted a distinction "between incidences of prosecutorial error and prosecutorial misconduct" and noted "[a] prosecutor who has committed error should not be described as committing misconduct." *State v. Schlitter*, 881 N.W.2d 380, 393–94 (Iowa 2016). "While the analysis for prosecutorial error and prosecutorial misconduct are the same, the phrase prosecutorial error should be used to describe instances of mistake, human error, or poor judgment." *State v. Royer*, No. 16-1206, 2017 WL 4570431, at *2 n.1 (Iowa Ct. App. Oct. 11, 2017). Similarly, instances of mistake, human error, or judgment just not to our liking by a district court should not be described as committing discretion abuse.

"Abuse of discretion." Can't we think of a kinder and gentler term to use? Words matter.

**MULLINS, Judge** (dissenting).

I respectfully dissent, join in the dissents by Judges Vogel and McDonald, and write separately.

First, I acknowledge the concern of the majority opinion that the legislature has not explicitly directed judges to consider the results of risk assessment evaluations in making all sentencing decisions. I disagree, however, that the lack of explicit direction requires exclusion of a sentencing court's consideration of risk assessment evaluations disclosed and intertwined in presentence investigation (PSI) reports prepared by each judicial district department of correctional services (DCS).

> The purpose of the [PSI] report by the judicial district department of correctional services is to provide the court pertinent information for purposes of sentencing and to include suggestions for correctional planning for use by correctional authorities subsequent to sentencing.

Iowa Code § 901.2(4) (2017).

The sentencing court is not to consider its sentencing options until "[a]fter receiving and examining all pertinent information, including the [PSI] report ." *Id.* § 901.5. Included in the court's sentencing options is authorization to defer judgment and sentence, to impose sentence and suspend execution of the sentence or part of it, or defer sentence, all as provided in Iowa Code chapter 907. *See id.* §§ 901.5(1), 907.3(1)(a), (2)(a), (3). Section 907.3 allows for probationary supervision by DCS in the event one of those options is chosen.[5] "Probationers

---

[5] Technically, a deferred sentence does not use the term "probation," but allows the court to "assign the defendant to the judicial district [DCS]. The court may assign the defendant to supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate." Iowa Code § 907.3(2)(a).

are subject to the conditions established by the judicial district [DCS] subject to the approval of the court, and any additional reasonable conditions which the court or district department may impose to promote rehabilitation of the defendant or protection of the community." *Id.* § 907.6.

In 1996, twenty-two years ago, the Iowa legislature enacted Iowa Code section 901A.1(4)(a), which provided: "The district department of correctional services shall place an individual committed to it under section 907.3 to the sanction and level of supervision which is appropriate to the individual *based upon a current risk assessment evaluation.*"   1996 Iowa Acts ch. 1193, § 15(4)(a) (emphasis added).   That provision was later renumbered as section 901B.1,[6] which now provides in relevant part:

> 901B.1.   Corrections continuum—intermediate criminal sanctions program
>
>     1.  The corrections continuum consists of the following:
>     . . . .
>     b.  LEVEL TWO.  Probation and parole options consisting of the following:
>     . . . .
>     c.  LEVEL THREE.  Quasi-incarceration sanctions.  Quasi-incarceration sanctions are those supported by residential facility placement or twenty-four hour electronic monitoring including, but not limited to, the following:
>     . . . .
>     2.   "Intermediate criminal sanctions program" means a program structured around the corrections continuum in subsection 1, describing sanctions and services available in each level of the continuum in the district . . . .
>     3.a.   Each judicial district and judicial district [DCS] shall implement an intermediate criminal sanctions program. . . .
>         . . . .

---

[6] When this provision was added to the code after its enactment, it was numbered as section 901B.1 rather than 901A.1.  *Compare* 1996 Iowa Acts ch. 1193, § 15, *with* Iowa Code § 901B.1 (1997).

        4.a.  The district [DCS] shall place an individual committed to it under section 907.3 to the sanction and level of supervision which is appropriate to the individual *based upon a current risk assessment evaluation*. Placements may be to levels two and three of the corrections continuum. . . .

        b.  The district department may transfer an individual along the intermediate criminal sanctions program operated pursuant to subsection 3 as necessary and appropriate during the period the individual is assigned to the district department. . . .

(Emphasis added.)

Section 901B.1 is a legislative direction to each district DCS to use risk assessment evaluations for probation placement decisions. The DCS prepares the PSI reports for the court, and the DCS is required to include suggestions for correctional planning subsequent to sentencing. *See* Iowa Code § 901.2(4) ("The purpose of the report by the judicial district [DCS] is to provide the court pertinent information for purposes of sentencing and to include suggestions for correctional planning for use by correctional authorities subsequent to sentencing."). It is not surprising that the PSI reports prepared by the DCS would disclose to the court and to correctional authorities the factors and considerations, including risk assessment evaluation information that would guide the DCS in the provision of services, programs, and supervision in the event of probation. Iowa Code section 901.2(1) provides that "the court shall receive from . . . the judicial district [DCS] . . . any information which may be relevant to the question of sentencing."

In the exercise of a sentencing judge's sound discretion, the judge must consider multiple, permissible factors. Included in the information a judge must consider are the contents and recommendations from the statutorily prescribed PSI report, *see id.* § 901.5, subject to a duty to disregard information that is improper for sentencing consideration, such as pending or dismissed criminal

charges. Judges reasonably expect the PSI report to include recommendations for the court to consider in sentencing. Because probation is a sentencing option in most cases, the PSI report often includes identification of services, programs, and levels of supervision that the DCS recommends to the court or that the DCS would intend to implement in the event the court grants probation. If a judge is trying to decide whether to incarcerate a defendant or keep the defendant in the community on probation, then I submit knowledge of what services, programs, and supervision DCS intends to provide pursuant to levels two and three of the continuum is relevant to the court. The DCS preparer of a PSI report often, and understandably, recites the reasons or considerations underlying the recommendation. That information is important to a sentencing judge in deciding whether probation would likely accomplish the required objectives of sentencing, and thus which of the required sentencing options it should order as required under Iowa Code section 901.5.

This integrated approach to PSI preparation is, I believe, what happens in reality. Further, by virtue of the 901B.1 legislative mandate and the interplay between sections 901.2, 901.5, and 907.3, I believe such integration is expected, if not implicitly required. The disclosure—the transparency—by DCS of the factors it considers in making its recommendations lends credibility as well as bases for challenge by either party in a sentencing proceeding. Such disclosure should not be discouraged, and the use of risk assessments for purposes of making correctional supervision decisions is legislatively mandated.

The sentencing judge in this case recited and considered multiple facts and factors in sentencing Guise, as is required under Iowa law. My reading of the

sentencing record is that the PSI report's recommendation for intensive supervision was the proverbial "straw that broke the camel's back," it was the last straw, the tipping point.  Every day in Iowa, sentencing judges review PSI reports and other pertinent information and in the process reach a point at which they have made an ultimate decision.  The decision may be based on a composite of information, specific pieces each of which are no more important than any other piece of information.  Sometimes the decision is based on multiple pieces of information, one or more pieces of which carry lesser or greater weight.  Or the decision may be based on multiple bits of information, which reach a critical mass of volume, an addition to which tips the scales of justice in a particular direction. That is what judging is about, weighing the importance of relevant information and determining what is most important in guiding or justifying a particular decision. When a judge to discloses the tipping point or the last straw, it should not be considered as placing undue weight or emphasis on that particular fact.  So long as the judge has considered multiple facts or factors, the fact or factor that tips the scale should not be viewed as an abuse of discretion, so long as the judge has not considered improper or prohibited factors.

I have long held a view that the sentencing process can be effectively understood as having three components: requirements, prohibitions, and discretion.[7]  By statute, court rules, and case law, there are specific requirements that a judge must consider and must do as a part of pronouncing and ordering judgment and sentence.  By case law, there are facts and factors the consideration

---

[7] I have had the opportunity to share and explain that view many times through oral presentations and written materials at continuing legal education programs.

of which are prohibited and use of which will cause a near automatic reversal. Discretion, the exercise of which is mandated by statute and the abuse of which is prohibited, is generally satisfied when a judge considers required factors, plus other relevant and pertinent information, and bases the decision on multiple factors.

As stated above, I agree that use of risk assessment evaluations is not expressly required at sentencing in most cases. Exceptions can be found in Iowa Code section 901.11 for certain drug, child-endangerment, and robbery offenses, which require a judge to determine eligibility for parole or work release within certain parameters "based upon all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons." The majority argues that because the legislature included risk assessment as required in those situations and has not required it for other offenses, the use of risk assessment in other cases is impermissible. The logic does not follow. In section 901.11, the legislature specifically requires consideration of validated risk assessments. Its decision to not require their use in all cases does not support an argument they are prohibited in all other cases for which they are not required. That might be so if the list of required considerations were a finite list, but it is not. Nearly every Iowa Code section referencing factors or information to consider includes all "relevant" or all "pertinent" information. In my view, that leads directly to the discretion component of sentencing to which I referred above. It is in this "discretion" component that I consider the propriety of a judge considering the risk assessment information

referenced in the PSI in this case and the recommendations considered by the sentencing judge.

By requiring the use of validated risk assessments in section 901.11, the legislature has expressly approved their use and reliability in sentencing. By requiring DCS to use risk assessment evaluations for the last twenty-two years, the legislature has approved of their value and use. Based on the foregoing, I disagree that risk assessment evaluations are not relevant and not pertinent. If they are relevant and pertinent, their use is permissible—not required, not prohibited—in the court's exercise of its discretion. As an aside, I call attention to the fact that unlike many states that use strict criminal sentencing guidelines[8] with enumerated required factors, Iowa still recognizes the importance of courts exercising discretion based on statutory factors and other relevant and pertinent information.

One final matter. The majority relies on multiple sources of information, many opinion pieces, in support of its decision to reverse the sentence in this case. I question our court's independent use of that information in light of the lack of record made by the defendant at sentencing. The majority points to the lack of record of reliability of the Iowa Risk Revised. However, I point to the lack of any record in support of reversal. Guise did not make an adequate record on the issues upon which the court relies to reverse the sentence in this case. Unlike the

---

[8] Identification and implementation of sentencing options in Iowa requires integration of a myriad of statutory provisions. *See generally* Michael R. Mullins & Drake Univ. L. Sch., *Iowa Criminal Statutes Summary Chart 2016*, https://www.iowacourts.gov/static/media/cms/2016_chart1_097E79C501E5A.pdf (including selected criminal offenses, not procedural code sections or rules of criminal procedure).

majority, my trouble is with the lack of record that I believe should be necessary to reverse Guise's sentence. The majority argues there is a lack of record to support the use of risk assessment evaluations, but it is Guise's duty to have made the record to challenge the reliability. And, as I tried to illustrate above, the legislature has placed its stamp of approval on their use.

Thus, I respectfully dissent.

Vogel, Doyle, and McDonald, JJ., join this dissent.